IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

## STATE OF TENNESSEE v. JOYCE NEWMAN

**Direct Appeal from the Circuit Court for Sequatchie County**
**Nos. 3647, 3648     Thomas W. Graham, Trial Judge**

---

**No. M1999-00161-CCA-R3-CD  - Decided July 12, 2000**

---

The defendant pled guilty in Sequatchie County to two counts of selling a Schedule II substance and was sentenced to confinement for four years and six months. After serving six months, she was placed in community corrections. Subsequently, an affidavit was filed by her probation officer, alleging that she had violated her Community Services Behavioral Contract in several ways, including "breaking house arrest." Following a hearing, the trial court agreed that the defendant had violated the house arrest provision of the contract and ordered that she serve the remainder of her sentence with the Department of Correction. The defendant timely appealed, alleging that the trial court improperly considered certain evidence and that, if she was reconfined, she should have served her sentence at the local jail, rather than with the Department of Correction. Based upon our review, we reverse the order of the trial court and remand for a new revocation hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded for a New Hearing.**

GLENN, J., delivered the opinion of the court, in which RILEY, J., joined and WITT, J., concurred in results.

Philip A. Condra, Public Defender, and B. Jeffrey Harmon, Assistant Public Defender, Jasper, Tennessee, for the appellant, Joyce Newman.

Paul G. Summers, Attorney General and Reporter, Lucian D. Geise, Assistant Attorney General, James Michael Taylor, District Attorney General, and Steven H. Strain, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Joyce Newman, appeals as of right from a judgment of the Sequatchie County Circuit Court revoking her community corrections sentence and requiring her to serve the balance of her sentence in the Tennessee Department of Correction. The defendant pled guilty to two counts of selling Schedule II controlled substances. The defendant argues that the trial court erred in revoking her community corrections sentence solely on the basis of inadmissible hearsay testimony of her probation officer, thereby violating her confrontation rights. The defendant argues further that

the trial court erred in requiring that she serve the balance of her four-year sentence in the Department of Correction rather than in the local jail with a lesser required period of incarceration. After reviewing the entire record, we conclude that the trial court's acceptance of the testimony of the probation officer as to the instances of defendant's violations of house arrest without explanation concerning the unavailability of the curfew monitors who prepared the reports or proof of the reliability of the reports denied the defendant of her right to confront those witnesses, and therefore was an abuse of discretion. We remand this case for a new hearing to allow the defendant to cross-examine the curfew monitors.

## BACKGROUND

On May 27, 1997, the defendant was indicted for the sale of methamphetamine, a Schedule II controlled substance, in indictments number 3647 and number 3648. On November 4, 1997, the defendant pled guilty to the sale of methamphetamine as charged in indictment 3647, and on January 1, 1998, the defendant was sentenced to four years and six months as a Range I standard offender and fined $2,000. The method of service of sentence was six months in the county jail and four years in community corrections. On January 30, 1998, the defendant pled guilty to the sale of methamphetamine as charged in indictment number 3648 and received a sentence duplicating that in number 3647, the two sentences to be served concurrently. During the window of time between the defendant's guilty plea in case number 3647 and the entry of judgment in that case, the defendant was arrested in Grundy County for possession of methamphetamine, a charge which resulted in a jury conviction that was ultimately set aside for lack of sufficient evidence.

On November 16, 1998, a community corrections violation warrant was issued, charging the defendant with violating the terms of her community corrections sentence by "new conviction [the Grundy County conviction, later set aside], not making payments, not reporting, not completing community service, breaking house arrest, and testing positive." A revocation hearing was held on December 18, 1998, and continued to January 4, 1999. At the conclusion of the hearing, the trial court stated the following:

> All right, this is just a -- basically boils down to credibility in this situation. The probation officer says that at least on three occasions that there was no one at home after hours without any permission. Ms. Newman says she can't remember when those three nights occurred, but she knows for sure she was there. She can't -- she can't be specific about it. As far as the Court's concerned that's proof enough.
>
> . . . .
>
> The Court finds that she failed to be at home when she's supposed to be at home by a preponderance of the proof. The Court believes the testimony of the probation officer over the probationer in this case, determines that she violated the terms of her release and therefore that

-2-

she should be revoked on her probation for failure to comply with the requirements of the Community Corrections.

On the Probation Revocation Order, the trial court listed "violating house arrest" as the only grounds for revocation. The Community Corrections Order standard form included the following:

3. The defendant shall serve 120 days of house arrest. Upon successful completion of house arrest, the defendant shall abide by a curfew. House arrest may be extended or reinstated by the Community Corrections Program if the defendant violates any program rule.

The proof that the defendant failed to be at home on the seven occasions during August, September, and October, 1998, was offered by Sladjauna Pope, the defendant's probation officer. Her testimony was dependant on the reports of two curfew monitors who checked on the defendant at night. The defense objected to this testimony as inadmissible hearsay that denied the defendant her right to question the monitors who prepared the reports. Ms. Pope testified in the following exchange:

THE COURT: Why don't you list just the dates? It's hard for them to respond like that.

A. Okay. She was checked twice on 8/20/98 and was gone. 9/22/98 she was not at home. Then 10/5, 10/13, 10/19, 10/26.

THE COURT: Do they give you the exact hour that they check?

A. Yes, exact minute, like 18:20.

Q. For those dates, tell the Judge what time they checked and she wasn't home.

A. On 8/20 that's when it has, went to Taco Bell.

Q. What time?

A. 19:05 and 19:52.

Q. When was she suppose - - when did her curfew say she was suppose to be home that particular day?

A. She was on house arrest if she wasn't at work.

Q. So she wasn't suppose to be anywhere?

A. No. If she's not at work or seeing me - -

Q. She's suppose to be home period?

A. Yes.

Q. Okay. Go to your next date and tell the Judge what time y'all checked and she wasn't there.

A. 9/22. It was 18:20. And then 10/5 it was 20:30. 10/13 it was 18:25. 10/19, 18:20, and 10/26, 19:00.

THE COURT: All right. Let me see those sheets that you're reading from?

A. Those are what the curfew monitor provides each month.

The defendant testified that she was at home every night of the months in question. She also offered as an explanation for the monitors' reports the fact that she had no car to indicate her presence at home; her rented house had no doorbell; and she was at the back of the house in the evenings and often did not hear someone at the front door. Her daughter corroborated her testimony.

## ANALYSIS

### A. Standard of Review

A trial judge may revoke a sentence of probation or a suspended sentence upon a finding that the defendant violated the conditions of her probation or suspended sentence by a preponderance of the evidence.[1] See Tenn. Code Ann. § 40-35-311(e) (Supp. 1999). Proof beyond a reasonable doubt is not required, but proof "is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." Harkins 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)). The determination whether a defendant has violated conditions of her probation or community corrections sentence will not be disturbed on appeal unless it appears that there has been an abuse of discretion. See id. ("We are persuaded that an abuse of discretion method of appellate review is applicable to issues which address the revocation of a community corrections sentence."). For this court to find that the trial court has abused its discretion in revoking a community corrections sentence, it must be established that the record lacks any substantial evidence to support the conclusions of the trial court. See id.; see also State v. Gregory, 946 S.W.2d 829

---

[1]Our supreme court has held the following: "Given the similar nature of a community corrections sentence and a sentence of probation, we hold that the same principles are applicable in deciding whether a community corrections sentence revocation was proper." State v. Harkins, 811 S.W.2d 79, 83 (Tenn. 1991).

(Tenn. Crim. App. 1997) (finding no abuse of discretion in revoking probation where the trial court had before it evidence of two reliable field tests positive for cocaine).

## B. Sufficiency of the Evidence

The defendant insists that the trial court erred in allowing the State to prove house arrest violations, the sole basis for the trial court's revocation of her community corrections sentence, through inadmissible hearsay testimony of the probation officer and that by so doing, the trial court denied the defendant her constitutional right to confront witnesses against her. The State contends that the defendant did not question the reliability of the reports and that the defendant was allowed to cross-examine the probation officer, which the State argues met confrontation requirements. We treat this issue as one of sufficiency of the evidence.

It is settled law that the procedural requirements in supervised release revocation proceedings are less stringent than those employed during adversarial criminal trials. See Black v. Romano, 471 U.S. 606, 613, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985) (noting that the revocation hearing "does not require the full panoply of procedural safeguards associated with criminal trial"); Bledsoe v. State, 215 Tenn. 553, 387 S.W.2d 811, 814 (1965) (noting that "a revocation of a suspended sentence does not require the quantum of proof necessary to convict one of a crime in the first instance").

Although the defendant's freedom interest is conditional, she must still be afforded many of the core values of unqualified liberty of other citizens. In Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S.Ct. 1756, 1761-62, 36 L.Ed.2d 656 (1973), the U.S. Supreme Court established the minimum requirements of due process in probation proceedings. Those requirements in Gagnon duplicate the requirements set out by the Supreme Court for parole revocation procedures a year earlier in Morrisey v. Brewer, and include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). The Morrissey Court emphasized that "there is no thought to equate this second [final] stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Id.

Our supreme court has determined that hearsay evidence is admissible at a probation revocation hearing, thus depriving the probationer of the right to cross-examination, when minimum confrontation requirements of Gagnon are met. See State v. Wade, 863 S.W.2d 406, 409 (Tenn. 1993) (quoting favorably Wilson v. State, 521 A.2d 1257, 1260-61 (Md. App. 1987)). Those include (1) a specific finding by the trial court of "good cause" that would justify the denial of the defendant's right to confront and cross-examine an adverse witness; and (2) a showing that the information contained in the report is reliable. See id. at 409. The Wade court concluded that the drug test report in that case was not admissible into evidence because there was no showing of good cause to justify the absence of the technician who prepared the report, and, further, that even had there been such a showing, the report contained no "significant indicia of reliability." Id. at 410.[2]

Here, the defendant challenged the reliability of the reports of her curfew monitors for the months of August, September, and October, 1998, which her probation officer brought to the hearing. These documents were not entered as evidence, but the record indicates that the trial judge did look at them and found them to be reliable. The testimony of the probation officer reveals only the barest information concerning the content of the records and no information at all concerning their reliability. The State provided no explanation for the absence of the monitors, and thus the trial court found no "good cause" for their absence. The defendant was, therefore, denied an opportunity to cross-examine the monitors to determine exactly what sort of check they performed: whether they merely knocked once; whether they circled the house looking for lights; whether they knocked at the back door; whether they actually located the defendant at the Taco Bell as the cryptic entry read by the probation officer seemed to imply; and whether they were informed of problems with the defendant's ability to hear knocking at her front door.[3]

---

[2]This court has applied the standard in Wade to questions of sufficiency of the evidence where a community corrections sentence was revoked based on hearsay evidence. In State v. Scott Anderson, No. 03C01-9703-CC-00093, 1998 WL 205919, at *2 (Tenn. Crim. App., Knoxville, Apr. 29, 1998), we concluded that the trial court did not abuse its discretion in revoking appellant's community corrections sentence by relying on hearsay evidence from the probation officer because the appellant made no effort to correct the proof or object to it. In State v. Jimmie C. Ray, No. 01C019501CR00022, 1995 WL 464743, at *5 (Tenn. Crim. App., Nashville, Aug. 4, 1995), we concluded that the trial court abused its discretion in revoking appellant's community corections sentence by relying on hearsay evidence concerning the terms of the appellant's community corrections sentence. In State v. Ricker, 875 S.W.2d 687, 689 (Tenn. Crim. App.1994), we concluded that the trial court abused its discretion in revoking appellant's community corrections sentence by relying solely on an "unreliable laboratory test report without any good cause being shown or found to exist to deny the defendant the right to confront and cross-examine a person with knowledge about the testing done."

[3]The defendant testified on cross-examination that she had informed her probation officer of the problems she had hearing individuals knocking at her front door in the evenings when she was at the back of the house. The probation officer was not present at the hearing on January 4, 1999, when the defendant testified, so this fact was never contested.

We conclude that there was insufficient evidence before the trial court to prove the violation of the defendant's community corrections sentence solely on the basis of seven violations of house arrest in August, September, and October, 1998. Even under the less stringent evidentiary rules applicable to revocation hearings, the hearsay testimony of the probation officer, without a showing of good cause for the absence of the curfew monitors who prepared the reports, and without a showing of the reliability of the records, denied the defendant of her right to confront the witnesses against her and cross-examine one or both concerning the contested issue of her presence at home when seven checks were carried out. On this single issue, we conclude that the trial court abused its discretion.

## C. Excessive Punishment

The defendant finally argues that the trial court erred in requiring that she serve the balance of her community corrections sentence in the Department of Correction rather than in the local jail with some lesser amount of time allocated to incarceration. Pursuant to Tennessee Code Annotated Section 40-36-106(e)(4), following the revocation, the trial judge shall have the right to resentence the defendant to incarceration. The trial court ordered that the defendant serve the balance of her four-year sentence in the Department of Correction in accordance with the original judgment, allowing her credit for time spent in community corrections and any time spent in jail. Having determined that a new hearing should be held, this issue need not be addressed; nevertheless, we determine now that this issue is without merit and the trial court acted within its authority.[4]

## CONCLUSION

In accordance with the foregoing analysis, we conclude that the trial court abused its discretion in revoking the defendant's community corrections sentence for violations of house arrest proven solely by inadmissable hearsay evidence that denied the defendant her right to confront witnesses against her. We remand for a new hearing in light of this opinion.

---

[4]As to the punishment this defendant has received, we note, in passing, that her probation officer testified that the defendant was never required to participate in any drug rehabilitation program while on community corrections. The defendant's presentence report stated that the defendant admitted to a problem with methamphetamine, yet, at the hearing, the defendant testified on cross-examination that she did not think she had a problem. Hopefully, this defendant received some form of drug rehabilitation assistance during her period of incarceration in the Department of Correction.